CLARISSA C. LEWIS, appellant, *vs.* JOSEPH B. LEWIS and others, respondents.

The fact that a testator subscribed his name at the end of his will, in the presence of each of the attesting witnesses, or acknowledged that he had so subscribed it, to each of the attesting witnesses, must be proved as a distinct and independent act of itself, in order to admit the will to probate; and cannot be inferred or presumed from the proof of some other act required by the statute to be done.

A party seeking to establish a will, takes upon himself the burthen of proving the concurrence of all the acts essential to the validity of such an instrument. It is not enough that he proves one or two of them; but he must prove them all, in succession.

He must show that it was subscribed at the end thereof, by the testator himself, or by some person for him in his presence, and by his direction; that the subscription was made in the presence of each of the attesting witnesses, or acknowledged by the testator to have been so made, in the presence of each of the attesting witnesses; that the testator at the time of making or acknowledging such subscription, declared the instrument to be his last will and testament; and that each of the attesting witnesses signed his name at the end of the will, at the request of the testator.

Proof of any one of these four separate acts cannot be enlarged by implication, or presumption, so as to become proof of any other of the four separate acts.

Where neither of the attesting witnesses to a will saw the testator subscribe his name thereto, or heard him acknowledge the signature to be his, or state what the paper was; and the will was so folded or placed that the witnesses did not see any part of its contents, nor the testator's signature, but only the blank space upon which their names were written; *Held,* that the will was not properly executed, so as to authorize the surrogate to admit the same to probate.

THIS was an appeal from a decision of the surrogate of the county of Kings, refusing to admit to probate an instrument propounded as the last will and testament of Thomas Lewis, deceased. The will bore date February 2, 1849. The attesting witnesses were William H. Wing and Ferris Tripp, who were both examined before the surrogate. The substance of their testimony is given in the opinion of the court, and need not be repeated here. It appeared that on the day of the date of the will, the decedent, who was a merchant in Pearl-street, New-York, while at his store, sent out for, and procured, a blank or

printed form of a will; which he filled up in his own hand-writing. He afterwards called Wing and Tripp, two clerks in his store, into his private office " to see him sign the document," and they signed it as witnesses, at his desk, and wrote their respective residences, with their signatures. The *in testimonium* clause, above the signature of the testator, stated that he had *thereunto subscribed his name ;* and the attestation clause was as follows : " The above written instrument was subscribed by the said Thomas Lewis in our presence, and acknowledged by him to each of us, and he at the same time declared the above instrument, so subscribed, to be his last will and testament, and we, at his request, have signed our names as witnesses hereto, and written opposite our names, our respective places of residence."

The surrogate held that the instrument was not a valid will of real or personal property, for want of due execution, and refused to admit the same to probate.

*R. Emmett,* for the appellant. I. It is clear from the testamentary character of the instrument in question, the decedent's declaration that it was his will, his letter written on the same day to his wife, the form of the attestation clause, the fact that the blanks were filled up by himself, his request to the witnesses to see him sign, and his direction to them to put down their residences with their signatures. (1.) That the purpose of the decedent was to make his will; (2.) That he knew what the requisites of the law were in the execution of a will ; and, (3.) That he intended to comply with those requisites. II. The declaration that it was his *free will and deed,* was a sufficient declaration that it was his *last will and testament.* These words are used in the statute as the *legal definition* of the instrument; not to prescribe the particular language which the testator must use in declaring the character of the paper. (*Remsen* v. *Brinckerhoff,* 26 *Wend.* 325.) III. His name being actually subscribed at the end of the instrument, the first requisition of the statute has been literally complied with ; and, in the absence of positive proof, as to the precise time when he signed his name there,

Lewis v. Lewis.

the law will assume that his signature was there when he declared the instrument to be his will. (*Cooper* v. *Bochel*, 3 *Curteis*, 648. *Dudly* v. *Dudly*, 3 *Leigh's Rep*. 436.) IV. His signature must have been written, either when the witnesses were present in his private office, or before he called them in; and the stronger presumption is, that he signed in their presence, because, (1.) The attestation clause asserts it. (2.) The evidence, so far as it goes, is that he requested the witnesses " to see him sign the document." (3.) There is no proof to the contrary. (*Gore* v. *Gann*, 3 *Curteis*, 151. *Gregory* v. *Her Majesty's Proctor*, *Thornton's Cases*, 620.) V. If there was not sufficient in the case to sustain the presumption that he signed the instrument in the presence of the witnesses, the facts (see first point) would warrant the conclusion that he acknowledged his subscription to them. (*Gays* v. *Gays*, 3 *Curties*, 451. *Blake* v. *Knight*, *Id*. 547.) VI. The will, therefore, can only be rejected on the assumption that the testator, knowing that it was necessary either to subscribe it in the presence of the witnesses, or to acknowledge his subscription of them, purposely omitted to do either. (*In re Warden*, 2 *Curteis*, 334. *In re Thomson*, 4 *Thornton's Notes*, 643.) VII. The surrogate erred in his estimate of the evidence, in assuming, (1.) That there was *no* evidence that the testator signed his name in the presence of the witnesses. (2.) That one of the witnesses said that the testator did *not* sign it in his presence. The testimony of that witness was merely that he did not *see* him sign it. (3.) That the witness Tripp said that the testator did not *do* or *say* any thing, except to turn down a bit of white paper from the bottom of the instrument, and request the witnesses to sign it, with their places of residence, and declare the within to be his free will and deed. The testimony of the witness was, " that was all that was *said* at the time, *as near as I can recollect*." VIII. The surrogate erred in his view of the law. (1.) In assuming that our statute *says* that the subscription must be acknowledged *as a separate and distinct act from the declaration that it is a will*. (2.) In assuming that, under the English act, a declaration that it was the will of the testa-

tor, was insufficient as an acknowledgment of his signature. And, even if such were the law under the English act. (3.) In assuming that the same declaration would for a much stronger reason be insufficient, under our statute, as an acknowledgment of the testator's subscription. Our statute requires no more formal acknowledgment than the English act; and neither of them requires more in that respect than would have been previously necessary in cases where the testator did not sign in the presence of the witnesses. The intention of both was simply to put the existing rule of law as to such cases in a statutory form. IX. The requisition of our statute, that the testator should declare the instrument to be his last will and testament, as a *distinct formality*, does not destroy the effect of such a declaration, as an *independent fact*, to establish, with other circumstances, a compliance with any other formality required by the statute ; and such a declaration made in regard to a will *actually subscribed* by the testator, and accompanied by circumstances which show a knowledge, on his part, of the requisites of the law, and an intention to comply with them, is a sufficient acknowledgment, within the statute, that such subscription was made by him. It is a *substantial* compliance with the requisition of the statute, and the law demands no more. X. It is a well established principle of law, applicable alike to wills under the old acts, (29 *Car.* 2, *ch.* 3, § 5, *and* 1 *R. L. of* 1813, *ch.* 33, § 2,) and those now in force in England and in this state, that positive affirmative evidence by the subscribing witnesses, that the requisites of the law were complied with, is not essential to the validity of a will. When, from any cause, (without regard to lapse of time,) the witnesses are either unable or unwilling to afford such proof, the court may presume due execution by a testator upon the circumstances. (*Ellis* v. *Smith,* 1 *Vesey, jun.* 11. *Carleton* v. *Griffen,* 1 *Burr.* 549. *Stonehouse* v. *Evelyn,* 3 *P. Wms.* 253. *Addy* v. *Grix,* 8 *Vesey, jun.* 504. *Gore* v. *Gann,* 3 *Curteis,* 151. *Gaze* v. *Gaze, Id.* 451. *Blake* v. *Knight, Id.* 547. *Cooper* v. *Bochel, Id.* 648. *S. C. in Lond. Jur. Nov.* 21, 1846, *p.* 931 ; *also in Moore's P. C. Rep.* 439. *In re Warden,* 2 *Curteis,* 334. *In bonis Thompson,* 4

*Thornton's Notes of Cases in Eccl. Courts,* 643. *Burgoyne* v. *Showler,* 1 *Robertson,* 5. *Leach* v. *Bates, Id.* 714. *Clark* v. *Dunnavant,* 10 *Leigh's Va. Rep.* 22. *White* v. *Trustees of British Museum,* 3 *Bing.* 310. *Ray* v. *Walton,* 2 *Marshall,* 74. *Small* v. *Small,* 4 *Greenl.* 220. *Wright* v. *Wright,* 5 *Moore & Payne,* 316. 3 *Burrow,* 1773. 4 *Thornton's Notes,* 620. 3 *Leigh's Rep.* 436. 2 *Strange,* 1106. 3 *Barb. Ch. Rep.* 158. 2 *Barb. S. C. Rep.* 385.) XI. The case of *Ilott* v. *Genge,* referred to in the surrogate's opinion, was decided solely upon the ground that the testator *had made no statement or explanation to the witnesses of the nature of the paper which he requested them to sign.* That case recognizes the principle that if the will be already signed when the witnesses are called in, the testator's declaration to them that it is his will, may amount to an acknowledgment of his signature, although the testator's signature be not seen by them. (*Ilott* v. *Genge,* 3 *Curteis,* 160. *S. C. in* 1 *Thornton's Notes,* 572. *S. C. in* 4 *Moore's P. C. Rep.* 265.) XII. The circumstances of the case admit of no reasonable doubt that the requisites of the statute were *substantially* complied with in the execution of the will. It should therefore be admitted to probate, and the decree of the surrogate be reversed.

*F. B. Cutting,* for the respondents. I. In the due execution of every last will and testament, the statutes, with other requirements, direct that the subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so subscribed, to each of the attesting witnesses, and the testator at the time of making such subscription shall declare the instrument so subscribed to be his last will and testament. There is no evidence that the testator signed the will in the presence of the witnesses. Wing does not recollect. Tripp, the other witness, did not see the testator sign. There is no evidence of any acknowledgment by the testator that he had signed the same. II. Where the will was not signed in the presence of the witnesses, it is necessary that the signature be shown to the witnesses, or be in such a

position as may be seen by them, when the testator acknowledges the subscription. In this case the signature was purposely concealed. (*Ilott* v. *Genge*, 3 *Curteis*, 160. *See dictum of Judge Coulter, in Burwell and others* v. *Corbin and others*, 1 *Rand.* 144.) III. It does not appear that the will had been subscribed by the testator, when attested by the witnesses. It may have been subscribed afterwards and at another time. IV. Though perhaps it is not necessary that the will should be actually subscribed by the testator before being attested by the witnesses, and the declaration or publication of the nature of the instrument, yet the subscription by the testator should be a part of the same transaction. (*In goods of G. L. Olding, deceased*, 2 *Curteis*, 865. *Pennant.* v. *Kingscote*, 3 *Id.* 642. *Cooper* v. *Bochel, Id.* 648. *Doe* v. *Doe*, 2 *Barb. S. C. Rep.* 200.) V. A declaration of the nature of the instrument, according to the terms of the statute, is not an acknowledgment of the subscription. (*Butler* v. *Benson*, 1 *Barb. S. C. Rep.* 526.) VI. There is no evidence of any or of a sufficient declaration by the testator, that the instrument so subscribed was his last will and testament. Tripp alone testifies as to what was said by the testator to the witnesses. VII. The statutes in requiring the testator, at the time of making or acknowledging the subscription, " to declare the instrument so subscribed to be his last will and testament," intend an act tantamount to publication, and distinct from each of the other requirements. (*Heyer* v. *Burger*, 1 *Hoff. Ch. Rep.* 1.) VIII. Neither of the witnesses appears to have known at the time of attesting the paper that it was a will, except inferentially, from a distinct fact. IX. No presumption can exist in favor of the regular execution of the will, except where lapse of time or other circumstances may justify it. In this case the execution of the will was recent; both witnesses were examined, and they do not contradict each other. X. Where any of the formalities required by the statutes in the execution of a will are not substantially complied with, the will is void. (*Brinckerhoof* v. *Remsen*, 8 *Paige*, 488 ; *same case on appeal*, 26 *Wend.* 325. *Chaffee* v. *Baptist Missionary Conv.* 10 *Paige*, 85.)

*By the Court,* Brown, J.   The 40th section of the statute (2 *R. S.* 7) prescribes what acts are essential to the valid execution of a will.   The term executed, signifies those required of the testator.   And the term attested, those required of the witnesses.   The testator executes and the witnesses attest.   If this distinction is borne in mind it will relieve the question of the due execution of the paper claimed to be the will of Thomas Lewis, of much of its embarrassment, and serve to reconcile the law as we now understand it, with some of the English authorities cited on the argument.   The word *published*, is not found in the section, because the word *executed* is sufficiently comprehensive in its meaning to embrace every thing that the principal actor is required to do, to render the instrument complete. Publication is, however, recognized and required by the third subdivision, as a distinct and independent act, from that of subscribing, or acknowledging the subscription.   And I shall employ the term publication to signify the act of declaring or making known to the witnesses, that the testator understands and intends the instrument subscribed by him to be his last will and testament.

The principal question discussed upon the argument—and the only one which I incline to examine—is the construction to be given to the second subdivision of the 40th section, which demands that the subscription of the testator's name, at the end of the will, " shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses." Must that act be proved as a distinct and independent act of itself, or may it be inferred or presumed from the proof of some other act required to be done, by one of the other subdivisions of the section ?   In *Chaffee* v. *The Baptist Missionary Conv.* (10 *Paige*, 85,) and in *Rutherford* v. *Rutherford*, (1 *Denio*, 33,) the same identical question was discussed and judicially determined, so far as the late court of chancery and this court had power to determine it: and the decisions seemed to leave no room for doubt or dispute.   The industry and research, however, displayed by the learned counsel for the appellant, and the

ability and sincerity with which he commended his views to the consideration of the court, together with the large amount of property dependent upon the validity of the will, justify, if they do not absolutely demand, a re-examination of the grounds upon which those decisions must stand.

A party seeking to establish a will takes upon himself the burthen of proving the concurrence of all the acts essential to the validity of such an instrument. It is not enough that he proves one or two of them, but he must prove them all in succession. He must show that it is subscribed at the end thereof by the testator himself, or by some person for him, in his presence and by his direction. He must also show that the subscription was made in the presence of each of the attesting witnesses, or acknowledged by the testator to have been so made in the presence of each of the attesting witnesses. He must also prove that the testator, at the time of making such subscription, or at the time of acknowledging the same, declared the instrument to be his last will and testament. And in the last place he must show that each of the attesting witnesses signed his name at the end of the will, at the request of the testator. As I read the statute, there must be proof of each of these four separate acts, independent of each other. Evidence that the testator subscribed, and that the witnesses subscribed, is not proof that the testator signed in the presence of the witnesses. Evidence that he subscribed in the presence of the witnesses, and that they attested the instrument at his request, is not proof of its publication in conformity with the directions of the third subdivision of the 40th section. Neither is the evidence of its publication in conformity with the third subdivision, proof that it was subscribed in the presence of the witnesses, or acknowledged to each of the witnesses to have been so subscribed, so as to satisfy the demand of the second subdivision. Proof of any one of these four separate acts cannot be enlarged by implication or presumption, so as to become proof of any other of the four separate acts. The order in which these several acts are to be performed, is of no moment. "In contemplation of the statute they are all to be done at the same time. Neither

Lewis *v.* Lewis.

of the four acts which, united, make a valid execution of the instrument, may be done at a different time from the rest. If the instrument has in fact been signed at a previous time, then the signature must be acknowledged to the subscribing witnesses, which is deemed to be equivalent to a new signing of the instrument. I am clearly of opinion, therefore, that a will is duly executed when the several acts required by the statute have been performed at the same time, whatever the order in which such acts may be severally performed." (*Doe* v. *Doe*, 2 *Barb. S. C. Rep.* 205. *Seguine* v. *Seguine, Id.* 394.) Ethical and legal writers may differ as to the origin of the right of testamentary disposition—whether it be an acquired or a natural right—but there is one thing which admits of no dispute; and that is the right of the legislature to prescribe the manner of its exercise, and to declare upon what evidence a testamentary disposition shall be deemed sufficiently established to pass the estate of a deceased individual. The rules which restrain and regulate its exercise, which demand, upon the proof of a will, an accumulation of evidence unknown in any other proceeding, proceed from a profound sense of the necessity of protecting age and infirmity, and decaying mental faculties, from oppression and imposition. And when they are carefully and legibly written in the statute book, the courts have no other duty but to see them rigidly enforced. The law of evidence, in its application to the proof of the several facts which, united, constitute a valid will, is the same as it is in its application to the proof of any other fact. The evidence may be direct and positive, or it may be circumstantial and presumptive; for the law of evidence in regard to wills, as well as in regard to deeds and documentary proof generally, must have reference to the casualties of human life and the infirmities of human memory. Thus in a case where the attesting witnesses are dead, and the instrument has a perfect attestation clause which asserts that the requisites of the statute have been complied with, and the name of the testator at the end of the will, and the names of the witnesses to the attestation clause, are proved to be in their proper hand-writing, the proof would be circumstantial and presumptive; but still it

would be such as would justify a court or jury, in the absence of all suspicious circumstances, to determine in favor of its due execution. So if one of the witnesses should remember that all the requisite circumstances actually occurred, and the other should not. (*Nelson* v. *McGiffert,* 3 *Barb. Ch.* 158.) Or, if neither remembered more than the fact of attesting the will, and did not disprove what the attesting clause asserted, the proof would still be sufficient to uphold a judgment in favor of the due execution of the will. This is the doctrine of the case of *Remsen* v. *Brinckerhoff,* (26 *Wend.* 325.) Both Chief Justice Nelson and Senator Verplanck, who delivered opinions, put the decision not upon the want of recollection of the subscribing witnesses, but upon the express ground that there was affirmative proof "that they did not read the declaratory clause, and that nothing passed that could indicate or inform them that they were witnessing a will and not a deed or lease." So in *Chaffee* v. *The Baptist Missionary Convention,* the reason given by the chancellor for his decision is, that the statements of the attestation clause were directly contradicted by the testimony of both the attesting witnesses. In *Rutherford* v. *Rutherford,* the evidence of one of the subscribing witnesses was of like import. He said "that the testator said nothing to the witness, and the witness made no remark to him. He did not hear the paper read, and did not see the testator sign his name." These cases did not stand upon the mere want of recollection of the attesting witnesses. There was no room left for the application of the law of presumptions, for there were no circumstances from which presumptions could arise. The requisite proof was not furnished, and it appeared affirmatively that it did not exist.

Numerous cases from the English books were quoted upon the argument, with a view to show that the proof of the acknowledgment, by the testator, of his subscription, to each of the attesting witnesses, as required by the second subdivision of section 40, might be inferred or presumed from actual proof of the publication according to the requisite of the third subdivision. These cases, with some few exceptions, were judicial constructions of section five of the English statute of frauds, 29th

Char. 2, chap. 3, which is in these words: "All devises and bequests of any lands or tenements shall be in writing and signed by the party so devising the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of the said devisor by three or four witnesses." The essential requisites of this section are that the instrument shall be signed by the testator, or by some other person in his presence, or by his express direction, and shall be attested and subscribed in the presence of the testator, by the witnesses. The words "attested and subscribed" apply to the witnesses, and not to the testator, and signify the acts to be done by them and not by him. The subscription need not be in the presence of the witnesses, nor acknowledged by the testator to each of the witnesses as is required by section 40 of our statute. If the testator's name be actually subscribed to the instrument at the time of the publication, and the instrument—not the subscription to the instrument—then be acknowledged to the witnesses, so that they may with truth attest to it—that is certify that the acknowledgment was actually made—it is all that the English statute of frauds demands. In *Ellis* v. *Smith*, (1 *Vesey, jun.* 11,) the will was subscribed by three witnesses, before whom the testator declared it to be his will, but did not sign it. Such declaration was held equivalent to signing before them, and the will was held to be good within the 5th section of the statute of frauds. A will of lands, subscribed by three witnesses in the presence and at the request of the testator, is sufficiently attested within the statute of frauds, although none of them saw the testator sign, and only one of them knew what the paper was. (*White* v. *The Trustees of the British Museum*, 6 *Bing*. 310.) In this case Tindal, chief justice, says: "It has been held in so many cases that it must now be taken to be the law, that it is unnecessary for the testator actually to sign the will in the presence of the three witnesses who subscribed the same, but that any acknowledgment before the witnesses that it was his signature, or any declaration before them that it is his will, is equivalent to an actual signing in their presence, and makes the attestation and subscription of

the will complete." *Wright* v. *Wright*, (7 *Bing*. 457,) was a feigned issue upon the execution of the will of Thomas Wright. The jury found the instrument to be wholly in the hand-writing of the testator, except the signature of two of the witnesses and the mark of the third, and that his signature opposite the seal was made before it was signed by the witnesses. " That about six years before his death the testator requested Judith Evetts to sign her name to the said paper writing, which she did accordingly. And at the time of her so signing the same he informed her that the said paper writing was his will. That after she had so signed, but at another time when she was not present, the testator requested Henry Walker to sign his name, and the said Elizabeth Flaxman to make her mark, which they accordingly did in his presence and in the presence of each other, and that after the said Elizabeth Flaxman had so made her mark, the testator wrote against the mark the words " Elizabeth Flaxman her mark," in manner aforesaid ; that the last two witnesses were not at any time informed that the said paper writing was the testator's will, nor did any of the witnesses at the time of attesting the paper writing see the testator's signature opposite the seal thereof." The paper also contained a full attestation clause written above the witnesses' names. The court said they must abide by their decision in the case of *White* v. *The Trustees of the British Museum*, and pronounced in favor of the will. ( *Vide also* 2 *Greenl. Ev.* 675, *and the cases referred to in note* 3.) It would serve no useful purpose to multiply authorities of this kind. Those already quoted sufficiently attest what Chancellor Kent, (*Com. p.* 515, *vol.* 4,) calls a disposition in the English courts to favor wills, and to depart from the strict construction and obvious meaning of the statute of frauds. They maintain the rule to the fullest extent, that there need have been no actual evidence that the subscription was made in the presence of the attesting witnesses, or acknowledged to them to have been so made, when there was proof of its publication in their presence, and of a request to sign as witnesses.

The statute of 1 Vic. ch. 26, sec. 9, prescribes the rule now

in force in England, and declares that a will to be valid, shall be in writing, and "signed at the foot thereof by the testator or some other person in his presence and by his direction; and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time; and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary." In regard to the subscription in the presence of the witnesses, or the acknowledgment of the subscription by the testator in their presence, there is a slight verbal but no substantial difference between what is required by the English act and our own. In some other important particulars they are unlike. We shall derive no aid from the adjudications of the ecclesiastical courts, because of this dissimilarity, and because the decisions to which we have been referred are not in harmony with each other. In *Blake* v. *Knight*, (3 *Curteis*, 547,) it was held that positive affirmative evidence by the subscribing witnesses that the will was actually signed in their presence, or actually acknowledged in their presence, was not an absolute requisite to the validity of a will. "It is not necessary that a testator should actually have pointed out to the witnesses his name and say this is my name or my hand-writing, if the court is satisfied that the signature of the testator was there at the time." In *Re Thomson*, (4 *Thornton's Notes*, 643,) it was also held that an express acknowledgment was not necessary. Where a paper is produced by a testator to the witnesses with his name signed thereto and they have an opportunity of seeing his name, and attest the same by subscribing the paper, this is a sufficient acknowledgment of his signature. In *Ilott* v. *Genge*, (3 *Curteis*, 160,) the deceased requested two persons to sign a paper for him, which they did in his presence. The paper was so folded that the witnesses saw no writing whatever upon it, and the testator did not state what the nature of the paper was. On his death it was found to be his intended will. It was not admitted to probate, because the ninth section of the statute of Victoria had not been complied with. The judgment was affirmed by the judicial committee of

the privy council, and thereupon the lord chancellor said, "Assuming that the will was signed by the deceased before the witnesses were called in, we are of opinion that the mere circumstance of calling in witnesses to sign, without giving them any explanation of the instrument they are signing, does not amount to an acknowledgment of the signature by a testator." It is worthy of remark that the fifth section of the 29 Charles 2, did not require the testator's subscription or his acknowledgment of his subscription in the presence of the attesting witnesses as a separate and independent act, and that the ninth section of the statute of 1 Victoria, ch. 26, does not require the publication of the will in the presence of the witnesses as an independent act. Under the former statute the courts inferred the subscription, or the acknowledgment of the subscription, from the fact of publication, and under the latter statute they infer the publication from the act of subscription or acknowledgment of the subscription. Without going further, these cases sufficiently indicate the construction which the ecclesiastical courts put upon the present English statute of wills. It is not too much to say, that they cannot be followed in this state, without disregarding the plainest provisions made to prevent fraud and imposition in the testamentary disposition of real and personal property.

Neither of the attesting witnesses saw Thomas Lewis, the deceased, subscribe his name to the instrument in question. One of them swears positively that he did not, and the other swears he has no recollection that he did. The instrument is dated on the 2d of February, 1849, and the witnesses were examined on the 6th of December, 1850. Neither of them heard the deceased acknowledge the signature to be his. William Henry Wing says he has no recollection that the deceased said what the paper was, and that the subscription was his. Ferris Tripp, the other witness, gives the facts as they occurred, and in my judgment, they repel the inference that the deceased said any thing of the kind. He says, "Mr. Wing and myself were called into the office by Mr. Lewis the testator; where he had a paper of which he turned up so much as would allow us

to write our names, requesting us to sign the same, with our residences. He also said I declare the within to be my free will and deed. That was all that was said, as near as I can recollect." Again he says, "It (the paper) was laid on the desk and so folded or laid that all I saw was blank paper enough to sign our names upon. I do not wish to be understood as having described with precision the exact manner in which the paper was folded or placed. It was so arranged that I saw no parts of the contents, written or printed. I did not see his signature. I only saw the blank space upon which our names were written." It appears by the testimony that the instrument was either handed by the deceased to the appellant his wife, or placed by him in the drawer of a book case in his dwelling house, not sealed up, and accompanied by a letter addressed to her. She read the instrument and then laid it and the letter in the drawer again, where it remained until the day after his funeral. The letter is in the hand-writing of the deceased and speaks of the will being made, and of its contents, and makes some suggestions as to the disposition and management of the estate after his decease. The instrument, when produced was found to have been a printed blank with a full attestation clause, signed at the end thereof, with the name and in the proper hand-writing of the deceased, and all the blanks in the instrument and attestation clause in its original state were also filled in with writing in the proper hand-writing of the deceased. The production of the letter, and the proof of the hand-writing of the deceased to both the papers, contributes nothing towards the proof of the instrument as a will. It is not a question of hand-writing. Such evidence might be valuable in corroboration, if the testimony of the subscribing witness was impeached or discredited; but it never can supply the absence of that which the law demands, which they are not able to furnish. The evidence is ineffectual upon another ground. The letter undoubtedly was written, and, for any thing that appears the signature to the instrument may have also been written, after the deceased and the witnesses had separated. The case is marked by the absence of all evidence that his signature was

upon the instrument at the time they subscribed their names, and thus one of the requisites which the ecclesiastical courts deem absolutely essential is wanting. Nor can the attestation clause be of any value in this emergency. An attestation clause is of value when the attesting witnesses are dead or beyond the jurisdiction of the court, or where their memory has failed from any cause, but not when the facts which it asserts are affirmatively disproved. The theory upon which the assertions of an attestation clause are to come in aid of the proof of a will, is the presumption that reputable witnesses would not have put their names to it unless its contents were known to be true. But this presumption is destroyed when the signature of the deceased, and the clause itself, are concealed from the knowledge and observation of the attesting witnesses.

I am of opinion that the decree of the surrogate of the county of Kings, refusing to admit the instrument to probate as the will of Thomas Lewis, should be affirmed.

Decree affirmed.

[KINGS GENERAL TERM, April 5, 1852. *Morse, Barculo* and *Brown*, Justices.]