NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—December, 1885.

BUCKHOUT *v.* FISHER.

*In the matter of the probate of the will of* THOMAS
FISHER, *deceased.*

There is no such rule, in this State, as that words or acts which satisfy
the statutory requirements in regard to publication of an instrument
as a will, and request to witnesses to attest the same, necessarily include
a compliance with those relating to the testator's signature, and his
acknowledgment thereof.

Upon an application for the probate of an instrument purporting to be the
will of decedent, it appeared that the same was written upon one side
of a piece of paper, eight by ten inches in size, decedent's signature
being in its proper place, at the end.  Decedent did not subscribe his
name in the presence of either witness, and did not expressly acknowl-
edge his signature to either, nor was it shown that either of them saw
such signature at the time of the attestation, though the entire paper
was necessarily exposed to their view, and declared by decedent to be
his will.—*Held,*

1. That the court was authorized to infer, from internal evidence, which
the paper afforded, that it bore decedent's signature when presented to
the witnesses.

2. That the exposure to them of the entire contents of the paper, accom-
panied with a declaration of its testamentary character, and request to
sign, constituted a sufficient acknowledgment by decedent of his signa-
ture within the requirement of the statute of wills (2 R. S., 63, § 40).

Blake v. Knight, 3 *Curt.,* 547—compared; Baskin v. Baskin, 36 *N. Y.,*
416; Mitchell v. Mitchell, 16 *Hun,* 97—explained.

APPLICATION for the probate of decedent's will,
made by Augusta Fisher, therein nominated execu-
trix; opposed by Sarah E. Buckhout, and others,
decedent's next of kin.  The facts are stated in the
opinion.

W. S. SMITH, *for proponent.*

D. R. SHEIL, *and* M. J. KEOGH, *for contestants.*

W. H. HAMILTON, *special guardian.*

THE SURROGATE.—The probate of this paper is opposed upon the ground of its defective execution. It is not disputed by counsel for the contestant that the decedent's signature appears in its proper place, at the foot of the instrument, nor is it disputed that the two persons who purport to have acted as attesting witnesses wrote their names as such at decedent's request, and with knowledge derived from his then present declaration that the paper thus attested was his last will.   But it is insisted that, neither at the time of this attestation and declaration, nor at any other time, did the decedent subscribe this paper in the presence of such witnesses, or either of them, or in the presence of both, or either, acknowledge that the paper had been by him subscribed.

That the act of subscription, or the act of acknowledgment of subscription, must take place in the presence of each of at least two attesting witnesses is of course conceded.   The proponent of this will does not claim that either of its attesting witnesses saw the testator sign it.   Nor is it claimed that to either of such witnesses the testator expressly and in terms declared that the paper had been by him subscribed.

It is nevertheless insisted by the proponent and the special guardian of certain infant next of kin, that to both these witnesses the decedent's signature was substantially and sufficiently " acknowledged," within the meaning of that word as used in our Statute of

Wills (R. S., part 2, ch. 6, tit. 1, § 40; 3 Banks, 7th ed., 2285).

The disputed instrument, save for the names of the witnesses and the date of their attestation, is wholly in the handwriting of the decedent. It is written on one side of a single piece of paper, eight by ten inches in size. It begins as follows:

"MOTT HAVEN, November 24, 1876.

"I, Thomas Fisher, of the City of New York, in the State of New York, do make and publish this as my last will and testament."

Then follow the dispositive clauses, and a clause appointing decedent's wife as his executrix, and then the words:

"Witness my hand and seal, this November 24, 1875.

"THOMAS FISHER.

"At Mott Haven, on November 24, 1876, the above named Thos. Fisher signed and sealed this instrument, and declared the same his last will; and we, in his presence and at his request, have subscribed our names as witnesses.

"NATHAN S. KING.
"S. H. MCILROY.

"December 2, 1876."

McIlroy was not asked and did not testify at the trial whether or not he saw the name of the decedent at the time he wrote his own, or whether or not in his presence the decedent acknowledged his subscription to the paper.

King, the other attesting witness, did not state, upon his direct examination, that he saw the decedent's signature, or that he heard anything said about it. Upon cross-examination, his testimony was as follows:

*Q.* Do you remember if that name Thomas Fisher was on the paper when you signed it?

*A.* It was.

*Q.* How did you come to notice that?

*A.* I could not help it; I looked on the paper. . . . .

*Q.* You distinctly remember having looked at that paper and seeing that?

*A.* It is in the same handwriting—the whole paper.

*Q.* You now distinctly remember having seen it on that day?

*A.* I do not know how I could help but notice if I saw that paper with his name attached to it.

*Q.* That is not the question: Do you now remember having seen it?

*A.* I do not know that I could say that I did. . . . . It would not have been his will if his name had not been attached to it. . . . . . I did not make any attempt to see if Thomas Fisher's name was attached to it.

*Q.* Have you any distinct recollection that his name was there at the time you signed it?

*A.* Not to say that his name was there.

Now, upon this state of facts, two questions present themselves for determination—

1st. Did this disputed paper bear the signature of Thomas Fisher when it was produced by him before the subscribing witnesses? And if yea, then,

2nd. Did the circumstances attending this production involve Fisher's acknowledgment of that signature within the meaning of the law?

It will be convenient for me to consider in the first instance the latter of these two questions.

*First.* Assuming then, for the present, an affirma-
tive answer to question first, was the signature of
Thomas Fisher duly acknowledged by him to the at-
testing witnesses ?

It is claimed by proponent's counsel that all doubts
that might have once arisen upon this subject are
resolved by two recent decisions of the Court of Ap-
peals (Matter of Phillips, 98 *N. Y.*, 267 ; and Matter
of Higgins, 94 *N. Y.*, 554). In the former case, as
in the case at bar, the alleged will was holographic,
occupied but a single page, and was exhibited un-
folded to the subscribing witnesses, so that the signa-
ture of its maker must necessarily have been exposed
to their view. Indeed, an examination of the case on
appeal (Bar Ass'n series, vol. 1, 1885) has disclosed
the fact that such signature was actually observed by
both such witnesses, and that to each of them the
testator expressly acknowledged that the paper bore
his subscription.

It was upon this state of facts that RAPALLO, J., in
the course of his opinion (concurred in by all the
members of the court except RUGER, C. J., who did
not vote) said : "The exhibition of the will and of
the testator's signature attached thereto, and his de-
claration to the witness that it was his last will and
testament, and his request to the witness to attest the
same were, we think, a sufficient acknowledgment of
the signature and publication of the will."

The other case on which this proponent especially
relies is Matter of Higgins (94 *N. Y.*, 554). A holo-
graphic will was there assailed for the alleged failure
of the testator to affix or to acknowledge his signa-

ture in presence of the attesting witnesses. One of those witnesses swore that the signature was in fact expressly acknowledged both to himself and to his fellow witness (see case on appeal, Bar Ass'n series, vol. 1, 1884). MILLER, J., writing in favor of sustaining probate, said : " We think that the testimony of Jones [the other attesting witness], who swore positively that the testator acknowledged the will to be his last will and testament was [proof of] an acknowledgment of his signature, and sufficient *with the other evidence given by him* to establish a due execution of the will."

This " other evidence " included among other things the statements following : " I cannot now detail all the circumstances. I was so busy. . . . . . I can't swear whether the testator said that was his signature or not. . . . . . I have no recollection one way or the other." Such was the evidence before MILLER, J., when he said : " The signature was plainly visible upon the instrument itself, and the testator having requested Jones and Stoker to subscribe their names to it as witnesses, and he having acknowledged the paper to be his last will and testament, the statute was fully complied with."

The language quoted from the decisions of the two cases above referred to is certainly very comprehensive. When it is read apart from the context, and without careful scrutiny of the facts to which it is applied, it seems to stop little short of asserting that, as regards a signed holographic instrument at least, a mere acknowledgment by its author that it is his will is of itself a sufficient acknowledgment that he

has subscribed it.   I do not understand, however, that a proposition so broad as that is meant to be enunciated in Matter of Phillips, or in Matter of Higgins.

The Court of Appeals has recently, in Matter of Hewitt (91 *N. Y.*, 261), referred with approval to the decision in Remsen v. Brinckerhoff (26 *Wend.*, 325), to the effect that there are four distinct statutory directions regarding the execution of a will, among which publication by the testator is one, and signing or acknowledging his signature in the presence of witnesses is another ; and that each of these requirements is as essential as any of the others to a valid execution of a testamentary paper.

No court in this State has ever held, so far as I have discovered, that words or acts which satisfy the statutory requirements in regard to publication and request are of necessity sufficient to satisfy also the requirement in regard to signing or acknowledgment.

If one, undertaking to execute his will, should privily sign it, and then coming into the presence of witnesses, should simply say to them : " This is my will ; I wish you to attest it," he would thereby fully comply with the statute so far as concerns publication and request ; but if he failed to inform the witnesses of the fact of the signature, and failed also to produce or exhibit the paper so that the witnesses could, if they chose, discover for themselves that it had been signed, he would fall short of effecting a valid execution.

Chaffee v. Bapt. Miss. Conv. (10 *Paige*, 85), and Lewis v. Lewis (13 *Barb.*, 17 ; 11 *N. Y.*, 225) contain expositions of the law relating to this subject, which have repeatedly received the approval of our highest

courts. The facts disclosed in those cases, however, differ in very important particulars from the case at bar.

In Chaffee v. Bapt. Miss. Conv., it was shown by the attesting witnesses that the decedent took from a drawer the disputed instrument, upon which her name had been already written, and putting her finger on such name, said: "I acknowledge this to be my last will." She did not state to the witnesses that she herself had subscribed her name, or that it had been subscribed by her direction, or, indeed, that she knew it was then upon the face of the paper, and there was no evidence from any source that she could read or write. In the course of his opinion, in denial of probate, the Chancellor said: "There was no evidence that the name was subscribed by the direction of the testatrix. . . . . . the will may have been brought to her precisely in the form in which it appeared when she took it out of the drawer." These words point to an essential difference between the case under consideration by the Chancellor and the case here to be determined, where it is not disputed that the subscription to the paper propounded is in the proper handwriting of the decedent.

There is no less dissimilarity between the circumstances of the present case and those of Lewis v. Lewis (*supra*). There, as here, the attesting witnesses did not see the decedent subscribe the paper propounded, and did not hear him make express acknowledgment of his signature. But there the contents of the alleged will were utterly concealed, and concealed designedly, from the observation of the witnesses.

Commenting upon these facts, ALLEN, J., pronouncing the opinion of the Court of Appeals, said: " If the party does not subscribe in their presence " (that is, in the presence of the attesting witnesses), " then the signature must be shown to them and identified and recognized by the party, *or in some apt and proper manner* acknowledged by him as his signature. The statute is explicit, and will not be satisfied with anything short of a substantial compliance with its terms. . . . . . A signature neither seen, identified, or in any manner referred to as a separate and distinct thing, cannot, in any just sense, be said to be acknowledged by a reference to the entire instrument by name, to which the signature may or may not be at the time subscribed."

It seems to me that there is nothing in this language from which it can be fairly inferred that, in Judge ALLEN's estimation, a testator's signature might not be sufficiently acknowledged *by his production of the paper bearing such signature to the subscribing witnesses, and by his intentional exposure of such signature to their observation* at the time of declaring to them that the paper was his last will, and requesting them to act as witnesses to its execution.

Such acts on the part of a testator have always been held by the English courts to be a sufficient compliance with the Victoria Statute of Wills, whose requirements respecting the presence of witnesses at the testator's signing or acknowledgment of his signature are no less stringent than those of our own law. The following cases, among others, were very elaborately discussed by DENIO, J., in Peck v. Cary (27 *N.*

*Y.*, 9); Matter of Mary Warden (2 *Curt.*, 334 [1839] );
Gaze v. Gaze (3 *Curt.*, 451 [1843] ); Blake v. Knight
(3 *Curt.*, 547 [1843] ); and Cooper v. Bockett (4 *Moo.
P. C. C.*, 416 [1845] ).   In an opinion in which four
of his associates concurred, and from which only one
declared his dissent, Judge DENIO said :  " I am sat-
isfied that the doctrine established by these cases is
sound and consonant with the spirit of our statute."

One of the cases thus referred to (Blake v. Knight)
was singularly like the case now before me for decis-
ion.   The will was holographic, covered only one page
of paper, and was exposed to the view of the wit-
nesses.   Those witnesses might have seen the testa-
tor's signature.   It did not appear that they did, in
fact, see it, and there was no acknowledgment of such
signature other than may have been involved in the
circumstances above recited.   The court declared
itself satisfied that the name of the testator was upon
the paper when it was produced to the witnesses, and
that, as the instrument was written by the testator's
own hand, its very production by him, under the cir-
cumstances disclosed, was a sufficient acknowledgment
of his signature.

Peck v. Cary (*supra*) was decided in 1863.   Four
years later, the court of Appeals, in Baskin v. Baskin
(36 *N. Y.*, 416), PORTER, J., pronouncing an opinion,
in which all his associates concurred, except PARKER
and GROVER, JJ.,—held that, " when a testator pro-
duces a paper to which he has personally affixed his
signature, requests the witnesses to attest it, and de-
clares it to be his last will and testament, he does all
that the law requires.   It is enough that he verifies

the subscription as authentic, without reference to the form in which the acknowledgment is made; and there could be no more unequivocal acknowledgment of a signature thus affixed than presenting *it* to the witnesses for attestation, and publishing the paper so subscribed as his will." I have italicized the word " it," in the sentence last quoted, to emphasize its relation to the word " signature." This case has been sometimes mistakenly referred to as tending to do away with the distinction so clearly indicated in Lewis v. Lewis, between a testator's acknowledgment of a paper as his will, and his acknowledgment of his signature as a subscription to such will. The gist of the decision, as I understand it, is that when a testator's request to witnesses to attest as his will a paper that he has already signed is accompanied by an actual exhibition and disclosure of such paper so signed to the witnesses, there is a virtual acknowledgment by the testator of his signature.

It was not disputed, by the proponents of the Baskin will, that one of the witnesses neither saw the testator sign nor heard him acknowledge his signature. But it was evident, from the circumstances attending the execution, that such signature stood revealed to both witnesses when they attached their names to the paper, and that this revelation was with the knowledge and by the procurement of the testator himself.

The case of Mitchell v. Mitchell (16 *Hun*, 97); decided in 1878 by the Supreme court in the Third Department, and subsequently affirmed on appeal (77 *N. Y.*, 596) is claimed by the contestant's counsel to be a strong authority in his favor. In that

case, the alleged testator produced a paper in the presence of two witnesses, saying: "I have a paper that I want you to sign." One of the two took the paper, examined it, ascertained its character, and saw the signature of its maker. The other was not offered, and did not seek an opportunity to make any examination. The decedent then said to both witnesses: "This is my will; I want you to witness it." Both thereupon affixed their names. Held, that the facts did not constitute a sufficient acknowledgment of the decedent's signature. Judge LEARNED, pronouncing the opinion of the Supreme court, said: "It does not appear that Hawkes, one of the witnesses, saw the testator's signature, and therefore it cannot be said that the testator acknowledged that signature to him. *Acknowledgment of the signature must include the same identification of the written words as necessarily exists when the witnesses see the testator write.*"

The affirmance of this judgment by the Court of Appeals was without an opinion, and without any intimation of its agreement or disagreement with the opinion below. It cannot, therefore, be justly regarded as an approval of the language just quoted from Judge LEARNED's opinion, but simply as an approval of the conclusion of the Supreme court that the paper in question was not entitled to probate. One of the subscribing witnesses did not see the alleged testator sign, did not hear him acknowledge his signature, did not see the signature itself, could not have seen it, and could not have been expected to see it, as the paper, when it was handed to him for his signature, "was folded four double," so as to conceal

all its contents except the attestation clause (see Court of Appeals Cases, 1879, vol. 1, Bar Ass'n series). And yet the denial of probate was sustained by a divided court, CHURCH, C. J., and FOLGER, ANDREWS and EARL, J J., concurring for affirmance, while RA- PALLO, MILLER and DANFORTH, J J., declared them- selves for reversal.

Robinson v. Smith (13 *Abb. Pr.*, 359) was decided by the Supreme court in the Seventh District in 1860. It sustained Surrogate HADLEY of Seneca county in his finding that a testator's signature to a testamen- tary paper was sufficiently acknowledged by his dec- laration to the subscribing witnesses that such paper was his will, provided that the signature was in fact seen by the witnesses.

In Conboy v. Jennings (1 *T. & C.*, 622), determined by the Supreme Court in the First Department in 1873, the will and the testator's signature thereto were seen by the attesting witnesses at the time when the paper was produced by the testator, and when he made the customary request and publication. Held, that this production of the paper was itself an ac- knowledgment of the signature. The same doctrine was upheld by the Supreme court in the Fourth De- partment, in Kinne v. Kinne (2 *T. & C.*, 391 [1873]). In McMillen v. McMillen (13 *Week. Dig.*, 350 [1881]), a case where a testator had neither signed nor ex- pressly acknowledged his signature in presence of the witnesses, the same court held that the will was never- theless proved, as, at the time of its execution, such signature had·been " open to view." That conclusion

seems to me sound, both in reason and upon the authority of the cases above cited.

*Second.* I have thus far taken it for granted that Thomas Fisher affixed his signature to this paper before it was presented by him to the attesting witnesses. I find, upon all the evidence, that such was the fact. Upon this subject, I have already stated the substance of the testimony of the witness King. He was unable to declare, as a matter of pure recollection of a transaction that took place seven years previously, whether or not he saw Fisher's signature on this paper when he himself signed it. That he thinks he did is very evident. But it is equally evident that his confidence springs from his conviction that if, at the time of execution, Fisher's name had not been apparent on the paper, its absence would then have attracted his attention, and would not afterward have been forgotten. The lack of proof due to King's defective memory cannot be supplied, as the proponents would have it, by the recital of the attestation clause; for the undisputed evidence shows that the attestation clause does not recite the facts. It is not true, and it is not claimed to be true, that this paper was signed by the testator in the presence of either of the subscribing witnesses.

The internal evidence afforded by the examination of the paper itself has satisfied me, however, that the testator had put his signature upon it before he presented it to the witnesses. Such evidence may properly be considered by the court. In Gwillim v. Gwillim (3 *Sw. & Tr.*, 200 [1862]), neither of the witnesses to a will, which on its face appeared to be duly

executed, but which was without an attestation clause, could say that he saw the testator's signature. The court, nevertheless, deemed itself at liberty to judge, from the circumstances of the case, whether or not it was probable that the testator's name was upon the will at the time of the attestation.

To the same effect see, also, in Goods of Huckvale (*L. R.*, 1 *P. & D.*, 375 [1867]), where the attesting witnesses were unable to say whether the testator's signature was or was not on the paper when they subscribed their names, and there was no positive testimony from any source upon that subject. The court (WILDE, J.), after reviewing Gwillim v. Gwillim, Cooper v. Bockett (*supra*), and other cases, said: "'The result is that, where there is no direct evidence on the point one way or the other, but a paper is produced to the witnesses and they are asked to witness it as a will, the court may, independently of any positive evidence, investigate the circumstances of the case, and may form its own opinion from those circumstances and from the appearance of the document itself, whether the name of the testator was or was not upon it at the time of the attestation; and if it arrives at the conclusion that it was there at the time, the case falls within the principle of the decisions to which I have referred, and the execution is good. Applying that rule to this case, I have no doubt whatever that the testatrix's signature was there at the time of the attestation. The circumstances that the will is holograph, and that the attestation clause ·is holograph, and is full and complete,

show that the testatrix knew what was required to make a good execution."

There is the closest possible similarity between the present case and In the Goods of Pearn (*L. R.*, 1 *P. D.*, 70 [1875]). Pearn, with his own hand, wrote a will, which contained this attestation clause : " signed, published and declared by the said Thomas Pearn, the testator, as and for his last will and testament," etc. At the time of the execution, the deceased declared the paper to be his will in the presence of the two attesting witnesses, and asked them to witness it; but he did not himself sign it in their presence, and there was no evidence that they saw his signature. HANNEN, J., held that he was at liberty to judge, from the circumstances, whether the name of the testator was on the will at the time of execution, and if he was satisfied that it was, to decree probate.

In 1875, was decided Matter of Janaway (44 *L. J., N. S., P. & M.*, 6). It was a case in which the attesting witnesses, at the request of a testatrix, subscribed their names to a paper produced by her as her will. They did not see the signature of the testatrix, but the court found that that signature was present when the witnesses signed, and so found upon the evidence afforded by the paper itself that it was all written at one time.

I am satisfied, upon inspection of the paper here propounded, that its entire contents, except the names of the witnesses and the date that appears opposite those names was written by the decedent himself at one time. The date of November 24th, 1876, appears upon the paper in three instances :

First, at its very threshold; second, in the testimonium clause; and third, in the clause of attestation. There is nothing in the case to repel, and there is much to support, what seems to me to be a fair inference from that fact, that the decedent prepared and signed the instrument on that day, with the intention of immediately completing its execution, but that for some reason he delayed for two years and more the fulfilment of his purpose.

Upon the whole case, therefore, I find: 1st, that when the instrument was produced by the testator to the attesting witnesses, it had been theretofore by him subscribed; 2nd, that when so produced, his signature was open to view; 3rd, that he requested the witnesses to become such, and declared to them that the paper was his last will; and 4th, that these circumstances involved his virtual acknowledgment of his signature, and constituted a valid execution of the paper as his will.

I pronounce for probate.