## ROBINSON a. SMITH.

*Supreme Court, Seventh District; General Term, Sept.,* 1860.

EXECUTION OF WILL.—DECREE OF SURROGATE UPON CONFLICTING EVIDENCE.

It is a sufficient acknowledgment of a testator's signature to a will, if he states to the subscribing witnesses, before they sign their names, that it is his will, and if they, at the same time, see his signature thereto.

The decree of a surrogate will not be reversed, merely because, there being a conflict of evidence between the subscribing witnesses and another person, as to what took place at the signing of the will, the surrogate relies upon the testimony of the latter. The surrogate has the best opportunities for judging of the degree of credit to which witnesses are entitled.

Appeal from a decree of the surrogate of Seneca county, admitting two wills of William Smith, deceased, to probate.

The facts are fully stated in the following opinion of the surrogate, delivered in February, 1859.

S. G. HADLEY, *Surrogate.*—On the 16th day of July, 1858, Reuben S. Smith, the sole executor named in the instrument dated December 27, 1850, propounded for probate that instrument, and citations were duly issued and served, returnable on the 3d day of September following; at which time the parties appeared by their respective counsel, and Delia Smith, the widow of the testator, and C. Wardner, executor therein named, then propounded.

for probate another instrument, dated February 19, 1851. The counsel for the respective parties entered into a stipulation in writing, signed by them, and now on file, that the proofs and examinations in relation to both said instruments be taken to-gether and passed upon by the surrogate, with the like effect as though a petition for the proof of said last-mentioned instrument had been duly made, and a citation duly issued and served ac-cording to law; and that said last-mentioned instrument be either admitted to probate or probate thereof refused by said surrogate upon such proof, with like effect as though such peti-tion had been duly made, and such citation issued and properly served on all the parties interested. Under this stipulation I ordered both applications consolidated, tried, and heard as one proceeding.

As to the instrument dated December 27th, 1850, the only question presented is, whether the testator duly acknowledged to the attesting witnesses, at the time of their subscribing their names, that he had signed said instrument. Both the subscrib-ing witnesses testify that the testator declared the instrument to be his last will and testament, and that they subscribed their respective names thereto, as attesting witnesses, at the testator's request, and in his presence and in presence of each other; that at the time the testator was more than twenty-one years of age, of sound mind and memory, and not acting under any restraint, and a citizen of the United States; that they did not see the testator subscribe his name to said instrument at the end thereof, and did not hear him say that he had done so. The witness, Cooper, on his direct examination, testifies unqualifiedly that the testator's name was to this instrument when he witnessed it, but on his cross-examination he does not recollect or know as he saw the testator's name to the paper when he signed it, but that his memory is not first-rate. He says that he (the testator) had this instrument in his hand and was sitting by the end of the table, and that he laid it down upon the table, saying, " Boys, I have sent for you to sign this;" this was after he had just de-clared the instrument to be his last will and testament; that he does not recollect as testator said any thing about having signed it, but is not positive and does not recollect definitely, it is so long ago; that when he went into the room the testator was sitting at the end of the table; that the pen and ink were on the

table, but he did not see the testator have the pen in his hand; that this instrument lay on the table by the testator when witness went into the room; that the attestation clause was not read by or to the witness. The other subscribing witness does not recollect as the testator said any thing about having signed the instrument, and is pretty certain he did not in his presence; that testator asked him and Cooper to sign it as witnesses; that testator was about seventy-two or seventy-three years of age, of sound mind, memory, and not under any restraint; that he does not know as he saw any writing except Cooper's name, and thinks the paper was so folded that he could only see where they were to sign their names. On his cross-examination, this witness testifies that no part of the instrument was read to or by him; that he did not see the testator have the paper in his hand, or hear him say he had signed it, or hear him acknowledge that he had done so. It was admitted that the body of this instrument is in the handwriting of the executor named in it. Two other witnesses testify to their acquaintance with the testator and with his handwriting; that they have seen him write, and that his name to both instruments is in his own hand writing. Was there, then, any sufficient substantial acknowledgment by the testator to these subscribing witnesses, at the time they subscribed their names, that the testator had signed his name thereto? Certainly, the evidence does not show that he did so in terms. But did he in substance and in fact do so? Had he subscribed his name to it before the subscribing witnesses signed theirs? Did the testator and the witnesses know that it was a testamentary instrument? Was the testator's name visibly to it when he laid it on the table in the presence of these witnesses, having just at that moment declared it to be his last will and testament, and asked them to sign it as witnesses? From the whole evidence of the facts and circumstances disclosed, I am satisfied that the testator had then signed it, and that his name was visibly to it, and that the testator and the subscribing witnesses understood that it was a testamentary instrument,—that no attempt was made at any concealment. There is no evidence of fraud, mental incapacity, or undue in fluence on the part of any one.

From these facts so found, my conclusion of law is, that there was a substantial compliance with all the requirements of the

statute in the execution of this instrument. I can hardly conceive how a person could more forcibly and effectively acknowledge the execution of an instrument than by laying it down on a table, with his name to it, saying, "I declare this to be my last will and testament, and I have sent for you as witnesses, and wish you to sign it as such." It would carry no additional conviction to my mind if he should add, "I acknowledge that I have signed it." I think well-settled adjudications sustain this view. The statute of 1st Victoria (passed July 3, 1837), § 9, is in these words, "And be it further enacted, that no will shall be valid unless it shall be in writing, and executed in manner hereinafter mentioned, that is to say, it shall be signed at the foot or end thereof by the testator, or by some other person in his presence and by his direction, and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time, and such witnesses shall attest or subscribe the will in the presence of the testator." This statute, so far as relates to the question of acknowledgment, is almost word for word like ours. In the English Ecclesiastical courts there have been several decisions as to what is a sufficient acknowledgment. In Ilott a. Genge (3 *Curteis*, 160), at page 172, the court says, "the case must rest on what may be considered a virtual acknowledgment of a signature. It is not necessary that the testator should state to the witnesses that it is his signature. The production of a will by a testator, it having his name upon it, and a request to the witnesses to attest it, would be a sufficient acknowledgment of the signature under the present statute." At page 175, the court says, "now the construction which I should be inclined to put upon this clause, is, that the production of the will with the signature to it, and requesting the witnesses to attest, and their attesting and subscribing the will, would be sufficient." Again, at page 183, this language is used, "It has been held in the Common Pleas that it is not necessary that there should be a verbal acknowledgment." In Gaze a. Gaze (*Ib.*, 451), the note is, "the will of the testator was produced in his own handwriting, and having his name signed at the end thereof by three persons, and he requested them to put their names underneath his." This is held a sufficient acknowledgment of the signature, the court being satisfied that the signature was the handwriting of the testator,

and in the opinion of the court, the judge says, " Was there a
sufficient acknowledgment of the signature of the deceased ?
I think it would be a hypercriticism to say that there has not
been a sufficient compliance with the words of the act in this
respect." In Blake *a*. Knight (*Ib.*, 547), the note is, " positive
affirmative evidence by the subscribing witnesses of the fact of
signing or acknowledging the signature of the testator in their
presence, is not absolutely necessary to the validity of the will.
The court may presume due execution by the testator from the
circumstances." See, also, page 561. In Gregory *a*. Queen's
Proctor (4 *Notes of Eccl. Cas.*, 620), the court says, " neither of the
witnesses affirm that the name of the deceased was there before
they attested, neither affirms that it was not there. The im-
pression of one is, that it was there; that of the other, that it was
not. What is the court to do, but to adopt the same principle
as in other cases, and look at the probabilities of the deceased
having signed the paper before the attestation of the witnesses ?"
(See, also, Hudson *a*. Parker, 1 *Robertson*, 14 ; Le Bas *a*. Greg-
ory, 10 *London Jurist*, 718.) The witnesses said, " the deceased
did not write his name in their presence, but one of them be-
lieved that the name of the deceased was subscribed when she
subscribed hers, and that the deceased said, ' this is my last will
and testament,' and the other did not remember of seeing the
name or hearing her speak." In this case the court says,
" what is the court to do under these circumstances. Is it to
depend on the infirm recollections of the witnesses for the
validity or invalidity of papers of this description. In cases like
this, where there is an infirmity in the recollections of the wit-
nesses, the court does not require positive and affirmative evi
dence, but will judge from all the circumstances of the case to
gether, and the probabilities on one side or the other are to have
effect and weight on the mind of the court."

I am not unmindful of the cases of Chaffee *a*. Baptist Mis
sionary Convention (10 *Paige*, 85) ; Remsen *a*. Brinkerhoof (26
*Wend.*, 331) ; or Lewis *a*. Lewis (1 *Kern.*, 224). But I think I
see a plain distinction between the facts of those cases and this.
In the case of Chaffee *a*. Baptist Missionary Convention, the tes-
tatrix did not sign the will in her own handwriting. The proof
shows that she could not write, which was a circumstance re-
quiring strong countervailing evidence, and required stronger

acknowledgment. In the case of Lewis a. Lewis, the testator purposely concealed his signature, if it was then there. But the remarks of Justice Allen show that he was not unmindful of the English authorities, and he rests his opinion on the fact of the intentional concealment of the signature, and he refers to and approves these authorities. So does the chancellor in Jauncy a. Thorn (2 *Barb. Ch.*, 40). In Wier a. Fitzgerald (2 *Bradf.*, 73), Surrogate Bradford refers to the English cases on this point, citing Blake a. Knight (3 *Curteis*, 547), and says, "this is accordant with the current of decisions under our statute, and the rule is marked by good sense, and in conformity to the established principles of evidence." In Butler a. Remsen (1 *Barb.*, 526), there was no evidence of testator's signing or acknowledging, &c.; no evidence of his handwriting was offered as in this case. Yet, inasmuch as the will was made some ten years before, the court sustained the will. This was eight years before. Bradford (2 *Bradf.*, 74, 2 ed.) says, "in England this is sufficient, and the cases have not been questioned. Their statute is the same as ours in this respect, and these cases have always been approved when cited and commented on in our courts. (2 *Barb. Ch.*, 40; 1 *Barb.*, 527; 2 *Bradf.*, 73.)

As to the instrument dated February 19th, 1851, if the testimony of the subscribing witnesses thereto is to prevail, there certainly was a fatal failure to comply with the requirements of the statute. They testify to being sent for, and of going to the testator's house, and when there the testator said to them, "that he had sent for them to sign this paper, being they had signed the other," and that they did so in his presence; that, at the time, the testator was more than twenty-one years of age, of sound mind and memory, and not acting under any restraint. This is substantially all that they recollect of being done towards the due execution of this instrument; in fact, they say nothing else was done. On the other hand, if the testimony of the person who wrote the will, and supervised its execution, is to be believed, there was a full and entire compliance with all the requirements of the statute, so far as relates to this instrument. Hence, as I view this case, so far as relates to this instrument, it is resolved entirely into a question of veracity between the witnesses, which is always a delicate, and often a difficult, question to determine correctly.

I have, so far as I have been able, watched the conduct and manner of these different witnesses as they have appeared on the stand, as they were being examined from time to time, and endeavored to satisfy myself as to their intelligence, recollection, and truthfulness, and from all I have seen of, and heard from, them, while on the stand, I am constrained to believe that the memories of the subscribing witnesses are defective, or that there is some other worse fault in them; and I am free to say that I have been slow in coming to this conclusion, considering that they stand numerically two to one, yet there are facts and circumstances disclosed that compel me to this conclusion. The face of the instrument itself bears marks that corroborate the witness Wardner,—the colors of the ink with which the names of the testator and the subscribing witnesses, and the certificate signed by the widow, and her signature thereto, are all the same, and all other writing in the instrument is in ink of a different color. Wardner testifies that he wrote this instrument at his own house, and there added the residences of the attesting witnesses, the testator having previously told him who they were to be; that the testator and witnesses signed their names at the testator's house, and that there he wrote the certificate for the widow to sign, and that she did there sign it at the same time, and with the same ink used by the testator and witnesses in subscribing their respective names. He also testifies that he there affixed the seal, after the testator had signed his name to the instrument, and while these witnesses were in the room, and in their presence. By an inspection of the instrument it is palpable that the seal was affixed after the testator's name was written, as the seal partly covers the last letter of the testator's name.

Again, the subscribing witness, Skinner, on his examination in relation to the instrument dated December 27, 1850, testifies as follows, in speaking of the execution of that instrument: "I never signed papers before for the testator which he declared to be his last will and testament, nor any other paper; I have since signed one he declared to be his last will and testament; I cannot say which of the two this is; I was called upon the last time by another party, and I suppose this is not the last one I witnessed; I never witnessed but two; it was about eight years ago since I signed the first one; the first one was signed in December or

January, eight years ago, I believe." On his examination touching the latter instrument, this witness testifies that the testator did not in any way declare this to be his last will and testament, and that he did not say a word about its being a will, but he rather thinks he did see testator's name or seal to it when he signed his name. What then did this witness mean when he testified that he had, subsequently to the time of the execution of the former instrument, witnessed another instrument, which the testator did declare to be his last will and testament, and that he never witnessed but two. The witness Wardner testifies that he was somewhat familiar with the formalities of executing wills, and knew what was requisite, and on his cross-examination he details substantially all these requisites, thus showing what he did know on this subject; and knowing this, it would be singular if he did not see the requirements of the statute satisfied, particularly when his sister-in-law was the sole legatee under its provisions; and stranger still, if all that was done was for the attesting witnesses to sign their names as stated by them. There is no evidence of imbecility in the testator, nor of undue influence, or fraud, or concealment.

The only remaining question is, does the latter instrument revoke the former, or can both stand together as forming the last will and testament of said deceased? I think they may and must do so. The latter does not in terms revoke the former, and is not inconsistent with it in any way, except that it names another person as sole executor. So far as the executor is concerned, it revokes the former. But the executor named in the latter has duly renounced the appointment. I shall therefore enter a decree allowing both instruments to probate and record as the last will and testament of the real and personal estate of the said William Smith, deceased, and that the costs of these proceedings be paid out of the estate of said deceased testator.

From the decree thus entered, the opponent of the will appealed.

*H. A. Dowe,* for the appellant.

*Henry D. Barto,* for the respondents.—I. The proper and due formalities were observed in the execution of the instrument dated December 27th, 1850. The only question raised before

the surrogate with reference to the execution of the instrument dated December 27th, 1850, was as to the sufficiency of the proof of the acknowledgment of the testator's signature. Was there a sufficient acknowledgment? 1. It is not necessary that both witnesses should swear to all the facts. (Weir *a.* Fitzgerald, 2 *Bradf.*, 42 ; Jauncey *a.* Thorne, 2 *Barb. Ch.*, 40, 66 ; Nelson *a.* McGiffert, 3 *Ib.*, 158, 163.) 2. It is not necessary that the testator should in terms request the witnesses to attest his signature. The request may be implied as well as expressed, or the request may be by acts as well as by words. (Brown *a.* De Selding, 2 *Sandf.*, 14 ; Ilott *a.* Genge, 3 *Curteis*, 160, 175, 183 ; Blake *a.* Knight, *Ib.*, 547.) 3. The English statute, 1st Victoria, framed July 3d, 1837, so far as it relates to the question of acknowledgment, is almost word for word like ours; and several cases have been decided in the English Ecclesiastical courts under that statute as to what constitutes a sufficient acknowledgment. The cases establish this position : When the testator produces the will with his signature visibly apparent on the face of it, to the witnesses, and requests them to subscribe it, this is a sufficient acknowledgment of his signature. But not where his signature is concealed from the witnesses. (Ilott *a.* Genge, 3 *Curteis*, 160, 176–179 ; Gove *a.* Garwin, *Ib.*, 155 ; Gaze *a.* Gaze, *Ib.*, 451 ; Blake *a.* Knight, *Ib.*, 547, 561 ; Kegwin *a.* Kegwin, *Ib.*, 607 ; Hudson *a.* Parker, 1 *Robertson*, 14 ; Le Bas *a.* Gregory, 10 *Jurist*, 718 ; *Parsons on Wills*, 17 ; 86 *Law Library*.) 4. The above cases have been cited in cases arising in this State, in which the precise question did not arise, and have been invariably approved. (Jauncey *a.* Thorne, 2 *Barb. Ch.*, 40 ; Weir *a.* Fitzgerald, 2 *Bradf.*, 73 ; *Dayton's Surrogate*, 2 ed., 71, 72 ; Lewis *a.* Lewis, 1 *Kern.*, 524 ; *Willard on Executors*, 102 ; Gaze *a.* Gaze, 3 *Curteis*, 451.) 5. Positive affirmative evidence by the attesting witnesses of the fact of signing or acknowledging the signature of a testator in their presence, is not absolutely necessary or essential to the validity of a will, and the court may presume due execution from attending circumstances. (Weir *a.* Fitzgerald, 2 *Bradf.*, 73.) Lapse of time since the execution of the will, will even warrant the presumption of some material facts. Ten years having elapsed, " acknowledgment of signature" was presumed. (Butler *a.* Remsen, 1 *Barb.*, 526.) Eight years having elapsed, some material facts

were presumed not sworn to by the witnesses. (Nelson a. Mc-Giffert, 3 *Barb. Ch.*, 162, 163.) In this case eight years have elapsed. 6. The cases of Lewis a. Lewis (1 *Kern.*, 524), and Chaffee a. B. M. C. (10 *Paige*, 85), do not contradict the English cases. In Lewis a. Lewis the testator purposely concealed his signature; if it was then there it was not visible, and the witness did not see him sign it, and it was not published. In Chaffee a. Bapt. Miss. Con., the testatrix could not write, and her name was written by another person. It is worthy of note, that when the chancellor decided the case of Chaffee a. Bapt. Miss. Con. (10 *Paige*, 85), in 1843, the decisions of 3 *Curteis* were not published, and had not come under the chancellor's eye. The English edition of *Curteis* was not published until 1844.

II. The proper and due formalities were observed in the execution of the instrument dated February 19th, 1851.

III. The instrument dated December 27th, 1850, and the instrument dated February 19th, 1851, can stand as making the last will and testament of the testator. 1. No will in writing, or any part, can be revoked otherwise than by some other will in writing, or writing of the testator declaring such revocation or alteration and execution, with same formalities with which a will should be executed. (2 *Rev. Stat.*, 2 ed., 8, § 42; 1 *Bradf.*, 437; 2 *Ib.*, 210; Nelson a. McGiffert, 3 *Barb. Ch.*, 164.) 2. If the two instruments are not entirely inconsistent with each other, both taken together may constitute the last will and testament of the testator. (Campbell a. Logan, 2 *Bradf.*, 90; 1 *Williams'* *Executors*, 131, note; *Ib.*, 188, note w; Brant a. Wilson, 8 *Cow.*, 56; Freeman a. Freeman, 27 *Eng. Law & Eq.*, 351; Calto a. Gilbert, 29 *Ib.*, 14; West a. Benedict, 1 *Bradf.*, 119.)

IV. The two instruments admitted to probate, the executors named in each instrument should be co-executors. (Frewin a. Relf, 2 *Brown Ch. Cases*, 221; 1 *Williams' Executors*, 136, note x; *Ib.*, 200–202, note x; Grant a. Leslie, 3 *Philimore*, 116; Lynch a. Bellow, *Ib.*, 427.)

BY THE COURT.*—JOHNSON, J.—I am of the opinion that the surrogate very properly admitted both wills to probate. I have examined the case and the authorities attentively, and can add

---

* Present, SMITH, KNOX, and JOHNSON, JJ.

nothing to the elaborate and satisfactory reasons assigned by the surrogate in his opinion to support his determination. There was positive evidence before him in regard to the last will, showing that all of the requirements of the statute were complied with when it was executed by the testator; and the surrogate gave credence to this testimony in opposition to that of the two subscribing witnesses, whose testimony, if entitled to full credit, tended most strongly to a contrary conclusion. It is quite obvious that the surrogate, before whom all the witnesses were examined and cross-examined, had a far better opportunity of forming a correct judgment on this question of the credibility of the several witnesses than this court can have. Besides, the probabilities are all in favor of the evidence to which he gave credence, in view of the surroundings of the drawing and executing the will. It would, in my opinion, be unwise, therefore, to interfere with the decision of the surrogate on this subject.

The controversy is confined mainly to the question of the due execution of the last will, which the surrogate, after a very careful and thorough examination, has found to have been duly executed and published by the testator.

The revocation of the first will by the execution and publication of the last, was *pro tanto* only. (Nelson *a.* McGiffert, 3 *Barb. Ch.*, 158; Brant *a.* Willson, 8 *Cow.*, 56.)

The decree of the surrogate must therefore be affirmed.

---

## TYLER *a.* WILLIS.

*Supreme Court, First District; General Term, September*, 1861.

### FORMER ADJUDICATION.—ANOTHER ACTION PENDING.

A judgment enrolled is *res judicata*, as to the matter in controversy, until reversed or vacated. *So held*, where an appeal from such judgment was yet pending.

Though in an action for an accounting, the defendant may be required to account for moneys received after the commencement of the action, yet the plaintiff is not bound to obtain such an accounting, but may make such items the subject of a new action. Especially is this the case where the defendant procured an