testified that, during the negotiations for the equipment, Hogan submitted his proposition to the defendant itself, and returned with the answer that the defendant accepted such proposition, and that this was before the equipment contract was prepared or executed, and before any talk had been had about a lighting contract. There was much examination and cross-examination of these two witnesses, and their evidence was more or less shaken, and varied from time to time; but their credibility was for the jury, who were to consider all the evidence, and to determine what the truth was, and it seems to us, their verdict in favor of the plaintiff upon this issue, to the effect that the contracts were separate and distinct contracts, and were not understood by the parties to constitute a single agreement, would have been supported by the evidence, and could not, under the rules applicable to the trial of issues of fact before juries, have been set aside by the court.

The result of the suggestions here made is that the court erred in taking the case from the jury and ordering a verdict for the defendant. For this error the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide event.

VAN BRUNT, P. J., and BARRETT, and RUMSEY, JJ., concur. PATTERSON, J., dissents.

---

(9 App. Div. 561.)

In re DE HAAS' WILL.

(Supreme Court, Appellate Division, First Department. November 6, 1896.)

WILLS—EXECUTION—PRESENCE OF SUBSCRIBING WITNESSES.

    Signing by testator in the presence of or acknowledgment of his signature to the subscribing witnesses (2 Rev. St. p. 63, § 40) is not shown by the testimony of the subscribing witnesses that they signed the will at the request of testator, who stated that it was his will; that they signed it together; that they could not see that testator had then signed it; and that they did not see his signature, though testator read to them the attestation clause, which recited all the requirements of law. Williams and O'Brien, JJ., dissenting.

Appeal from surrogate's court, New York county.

Proceedings for the probate of the will of Maurits F. H. De Haas, deceased. The will was admitted to probate, and contestant appeals. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

E. L. Heydecker, for appellant.
Jacob S. Van Wyck, for respondent.

INGRAHAM, J. The appellant objected to the admission of the will of this testator to probate, on the ground that his subscription at the end of the will was not made by the testator in the presence of each of the attesting witnesses, nor acknowledged by him to have been so made to each of such witnesses; and the surrogate having overruled that objection, and admitted the will to probate, the appellant has appealed to this court.

The Revised Statutes (volume 2, p. 63, § 40) imperatively require the subscription to the will by the testator to be made in the presence of each of the attesting witnesses, or that such subscription shall be acknowledged by the testator to have been made by him to each of such witnesses; and no will can be admitted to probate unless there is satisfactory evidence before the surrogate that this provision of the statute has been complied with. The Code of Civil Procedure (section 2618) provides that, before a written will is admitted to probate, two, at least, of the subscribing witnesses, must be produced and examined, if so many are within the state, and competent and able to testify; but by section 2620 of the Code it is provided that if the subscribing witnesses to a written will are dead, or incompetent, by reason of lunacy or otherwise, to testify, or unable to testify, or if such subscribing witness is absent from the state, or has forgotten the occurrence, or testifies against the execution of the will, the will may, nevertheless, be established upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of the action. These provisions, taken together, would require that the subscription made in the presence of each of the witnesses, or the acknowledgment by the testator to each of the witnesses that the superscription was his, must be proved either by the subscribing witnesses, or by the proof of handwriting and of such circumstances as would be sufficient to prove that the will had been subscribed by the testator at the end thereof prior to the time that the attesting witnesses signed it, and that such subscription was made by the testator in the presence of the witnesses, or that he expressly acknowledged a particular subscription to be his subscription to the will. This must be established, as to two witnesses, by evidence of such circumstances as would be sufficient to prove the fact of such subscription, either in the presence of the witnesses, or, if not that, then an acknowledgment of such subscription to the subscribing witnesses by the testator.

In Re Mackay's Will, 110 N. Y. 614, 18 N. E. 434, it was held that the "subscribing witnesses to a will are required by law, for the purpose of attesting and identifying the signature of the testator, and that they cannot do unless at the time of the attestation they see it"; that "the formalities prescribed by the statute are safeguards thrown around the testator to prevent fraud and imposition. To this end, the witnesses should either see the testator subscribe his name, or he should, the signature being visible to him and to them, acknowledge it to be his signature; otherwise, imposition might be possible, and sometimes the purpose of the statute might be frustrated." In Lewis v. Lewis, 11 N. Y. 220, where the acknowledgment or declaration made by the testator to the witnesses, or in their presence, as to the instrument, was, "I declare the within to be my free will and deed," it was held not a sufficient acknowledgment of his subscription to the witnesses, within the statute; Allen, J., writing the opinion, saying: "A signature neither seen, identified, nor in any manner referred

to as a separate and distinct thing cannot in any just sense be said to be acknowledged by a reference to the entire instrument by name, to which the signature may or may not be at the time subscribed." And in Re Laudy's Will, 148 N. Y. 404, 42 N. E. 1061, the same principle was applied.

The surrogate has admitted the will to probate, and the first question that we have to determine is whether there is any evidence upon which the finding could be based that the testator either subscribed his name in the presence of two witnesses, or acknowledged it to two witnesses at the end of the will to be his signature. In Re Laudy's Will, supra, there were two witnesses to the will, Dr. Porter and Mrs. Edwards. The testimony of Dr. Porter tended to show that the signature of the testatrix was upon the instrument at the time it was presented to him for his signature, and that she then stated that she had signed it. The testimony of Mrs. Edwards was to the effect that, at the time the paper was presented to her for her signature, it was so folded that she saw only the signature of Dr. Porter, and that she recalled no expression on the part of the testatrix in which the testatrix stated that she had signed the instrument. The attestation clause upon this will was substantially the same as that to the will in question, and the court of appeals, affirming the order of the general term which reversed a decree of the surrogate refusing to probate this will, held that the testimony of Mrs. Edwards was insufficient to authorize the admission of the will to probate; that there should be a new trial, as upon this evidence a question of fact was presented which involved the credibility of the witnesses; and that the difference between Dr. Porter's and Mrs. Edwards' testimony as to the exhibition of the testatrix's signature and her alleged declaration with reference thereto, together with the inferences to be drawn from the surrounding circumstances, required the submission of the question to a jury,—thus applying the provisions of section 2620 of the Code, that, where one of the subscribing witnesses testifies against the execution of the will, or, in other words, testifies to facts which would prevent the probate of the will, the will may, nevertheless, be established upon proof of the handwriting by the testator and the subscribing witnesses, and also such other circumstances as would be sufficient to prove the will upon the trial.

Keeping in mind this principle, we may examine the testimony of the two surviving witnesses to the will, the third witness having died before the testator. The two surviving witnesses were Mr. Skinner and Mr. Guy. Mr. Skinner, the first witness examined, testified that he first saw the will upon the day of its date; that one morning, upon visiting the studio of Mr. Guy, the other subscribing witness, the testator came in, and said "he would like our signatures to his will, Mr. Hubbard being also called on." The witness then stated that his impression was that he (the testator) "produced this paper, stating that it was his will, and asked us to sign it. We then signed it. I signed it, and I think the others did. We all three signed it together. On examining the paper, I see upon it the signa-

ture of Mr. De Haas. I cannot swear that the signature was there at the time I witnessed the paper. Whether he put it there in our presence I am not quite sure, but it was there before we left the room. I do not now recall any words that were used. The substance of them was simply that it was his will, and he wanted our signature to it." It is quite clear that this is insufficient to establish either the signing of the will in the presence of Mr. Skinner, or an acknowledgment by the testator to Mr. Skinner of a signature purporting to be that of the testator as his (the testator's) signature. The witness states again and again that he was testifying only as to impressions. While the attestation clause states that the testator signed the instrument in the presence of the witnesses, it does not appear on the testimony of Mr. Skinner that that statement of the attestation clause was true, and that the testator did subscribe the will in the presence of Mr. Skinner. In fact, the testimony of the witness seems to be that all there was said to him was that the testator said he would like the witness to witness his will, and that, when he made that remark, he had a paper in his hand, upon which the witness subsequently wrote his name. The other subscribing witness swore that the testator brought the paper to his room, and asked him to sign his will, and that he signed it, with the others; that Mr. Skinner and Mr. Hubbard were in his (the witness') room at the time; and that the testator read the attestation clause to the witness before he was requested to sign as a witness. The witness further testified that he had no recollection of seeing the testator sign the will; that he (the testator) read the attestation clause, but did not read the rest of the will, and he held the will "somehow in this way,"—in a way in which there was scarcely anything to be seen; held it folded down something like that (indicating); that he (the witness) saw nothing of the body of the will, and knew nothing of its contents; that he saw only the attestation clause, the place where he was to sign, and the signatures of the witnesses that were there. The witness does not recall whether he saw the paper signed or not. He says that nothing more was said by the testator when he handed the paper to the witness, requesting his signature, "than that it was his will, and he asked me if I would sign it, and I supposed that was all that was necessary,—my signature as a proof." It was in evidence that the other subscribing witness, Mr. Hubbard, was dead, but no effort was made to prove his signature.

We think this evidence was insufficient to prove that the testator subscribed this will in the presence of either of the two witnesses who were examined, or had acknowledged to either of them that a particular subscription or signature was his signature. The statute requires either a signature in the presence of the witnesses (of which there is no evidence), or an acknowledgment by the testator of a signature which was exhibited to the witness as his signature to the instrument. There is no evidence that any signature purporting to be a signature or subscription of the testator was ever shown to either of the two witnesses examined; and thus the fact of such subscription in the presence of two witnesses, or an acknowledgment of a subscription to two witnesses by the testator, is un-

proved. The attestation clause, as it stands, recites that the will was signed by the testator in the presence of the three subscribing witnesses, and proof of the death of one witness and of his signature to the attestation clause would be sufficient proof, within the section of the Code before cited, that the testator signed the will in the presence of one witness. Such proof was not offered as to the handwriting of such subscribing witness. But, to justify the decree in admitting the will to probate, there must be the evidence as to the fact of such subscription in his presence, or an acknowledgment to him of a subscription exhibited to him as the signature of the testator. The evidence does not show that there was a subscription to the will by the testator in the presence of the other two witnesses, thus showing that the attestation clause in that respect was false. The evidence does not show that the testator acknowledged to the two witnesses his signature to the instrument, or stated to them that he had signed the paper, or that a writing that he exhibited was his signature to the paper. And thus applying the principle in the case of Lewis v. Lewis, supra, that "a signature neither seen, identified, nor in any manner referred to as a separate and distinct thing cannot, in any just sense, be said to be acknowledged by a reference to the entire instrument by name, to which the signature may or may not be at the time subscribed," it seems that the evidence did not justify the admission of this will to probate.

We think, therefore, the decree of the surrogate should be reversed, and sent to the trial term of the supreme court, to be tried before a jury, with costs to the contestant to abide the result.

VAN BRUNT, P. J., and PATTERSON, J., concur.

WILLIAMS, J. (dissenting). The contestant and appellant is the widow of the testator. The testator died November 23, 1895, leaving the widow and three children by a former wife, his only heirs at law and next of kin. His will was made June 20, 1883, prior to the death of such former wife. The estate consists entirely of personal property. There were three witnesses to the will, Hubbard, Skinner, and Guy. Hubbard was dead at the time the will was presented for probate, and his signature as a witness thereto was not proven. The other two witnesses were examined before the surrogate upon the proceedings resulting in the probate of the will. The only question litigated before the surrogate (aside from the questions as to the construction of the will) was whether the due formalities were observed in its execution. The will was holographic, was acknowledged by the testator to the witnesses to be his will, and was declared by him in their presence to be his will, and they all subscribed their names thereto as witnesses, at his request, in his presence, and in the presence of each other, signing the ordinary attestation clause, stating, among other things, that the will was signed in their presence.

The only question is whether, upon all the evidence, the surrogate was justified in finding that the testator subscribed the will in the presence of the witnesses, or acknowledged his signature

thereto to each of the witnesses. It is not disputed that it was necessary to establish a subscribing of the will in the presence of the witnesses, or an acknowledgment of the signature to each witness, and that, if an acknowledgment was relied upon, it must have appeared that the signature itself was visible to the witnesses. In re Mackay's Will, 110 N. Y. 611, 18 N. E. 433; In re McDougall's Will, 87 Hun, 349, 34 N. Y. Supp. 302; In re Laudy's Will, 148 N. Y. 403, 42 N. E. 1061. In Orser v. Orser, 24 N. Y. 52, it was held that a will duly attested upon its face, the signatures to which are all genuine, may be admitted to probate, although none of the subscribing witnesses are able to swear from recollection that the formalities required by the statute were complied with, and even although some of them should swear positively that they were not, if the other evidence warrants the inference that they were. In Trustees v. Calhoun, 25 N. Y. 425, it was held that facts making due execution of a will need not all or any of them be established by the concurring testimony of the two subscribing witnesses. While both witnesses must be examined, the will may be established even in direct opposition to the testimony of both of them. In Re Cottrell's Will, 95 N. Y. 335, it was held that a regular attestation clause, shown to have been signed by the witnesses, and corroborated either by the circumstances surrounding the execution of the instrument, the testimony of the other witnesses to the fact of due execution, or other competent evidence, is sufficient to establish a will signed by the testator, even against the positive evidence of the attesting witnesses to the contrary. There are many other authorities to this same effect, and the principles established in these cases will hardly be controverted. Applying them to this case, it must be held that the facts and circumstances in proof before the surrogate were such as to warrant him in finding a proper execution of this will. He was justified in finding, notwithstanding the want of recollection of the witnesses, or their more or less positive evidence to the contrary, that the testator signed the will in their presence, or at least acknowledged his signature to each of the witnesses, such signature being visible to them at the time. The issue appears to be somewhat narrowed by proof given before the surrogate to the effect that the body of the will, the signature of the testator, and the body of the attestation clause were all written by the testator himself, and with the same ink and pen, while the ink and pen used by the witnesses in signing their names were different from those used by the testator. This would seem to indicate that the will was signed by the testator before the witnesses were called in. If this was a fact, then the only question remaining was whether the acknowledgment of the testator's signature to each of the witnesses was made, it being visible to the witnesses at the time. That he acknowledged the will to be his, and declared it to be his, is not disputed. It was sworn to by the witnesses, and was not denied. This acknowledgment would, by fair inference, seem to cover the signature, as well as the body of the will, the signature having been subscribed to the will, and being

there at the time of such acknowledgment. In re Buchan's Will, 16 Misc. Rep. 204, 38 N. Y. Supp. 1124, and the cases therein cited.

The only question really left, then, was whether there was evidence before the surrogate authorizing him to find that the signature was visible to the witnesses when it was acknowledged to them by the testator. The will was executed June 20, 1883. The hearing before the surrogate, when the witnesses gave their testimony, was February 17, 1896. More than 12 years had then elapsed since the transaction occurred as to which the witnesses spoke. Can memory be relied upon for so long a time to give a correct account in detail of the transaction? Are we to credit fully the statements of the witnesses, to believe they gave all that occurred, all that was said and done, and precisely as it was said and done? Especially, are we to give such effect to the evidence of the witnesses, when it tends to contradict the attesting clause, signed by the witnesses at the time, the probabilities of the case, and other circumstances appearing in the case, tending to show the proper execution of the will? It seems to us the surrogate was justified in finding the will was properly executed, and that he could not well arrive at any other conclusion. We do not consider the questions as to the construction of the will, inasmuch as the majority of the court agree to reverse the decree because the will was not shown to have been properly executed.

Our conclusion is that the decree of the surrogate admitting the will to probate should be affirmed, with costs.

O'BRIEN, J., concurs.